**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

————————————————— :
                                  :
GERMAINE JARMARE WIGGINS,         :
                                  :
            Plaintiff,            :          Civil Actions Nos.
                                  :          08-2251 (RMB) and
          v.                      :          08-2253 (RMB)
                                  :
OFFICER M. MONTOYA, et al.,       :
                                  :          **O P I N I O N**
            Defendants.           :
————————————————— :
                                  :
GERMAINE JARMARE WIGGINS,         :
                                  :
            Plaintiff,            :
                                  :
          v.                      :
                                  :
CAPTON GERALDINE COHEN,           :
et al.,                           :
                                  :
            Defendants.           :
————————————————— :


**APPEARANCES:**
GERMAINE JARMARE WIGGINS, I.D. No. 154438
Atlantic County Justice Facility
5060 Atlantic Avenue
Mays Landing, New Jersey 08330
Plaintiff Pro Se

**BUMB, District Judge**

Plaintiff Germaine Jarmare Wiggins ("Plaintiff"), currently confined at the Atlantic County Justice Facility in Mays Landing, New Jersey, seeks to bring this action in forma pauperis, pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights.  Plaintiff submitted for filing two

Complaints, one executed on May 2, 2008, and received by the
Clerk on May 8, 2008 (Civil Action No. 08-2251, Docket Entry No.
1) ("2251 Complaint"), another being executed on May 6, 2008, and
received by the Clerk on May 9, 2008 (Civil Action No. 08-2253,
Docket Entry No. 1) ("2253 Complaint"); each submission being
accompanied by a complete application to proceed in forma
pauperis ("IFP") with his six-month prison account statement.
Since it is appearing that Plaintiff qualifies to proceed IFP,
based on his affidavit of indigence and the absence of three
qualifying dismissals within 28 U.S.C. § 1915(g), the Court will
grant Plaintiff's application to proceed as an indigent and will
direct the Clerk of the Court to file both Complaints without
prepayment of fees.  At this time, the Court must review the
Complaints, pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A, to
determine whether it should be dismissed as frivolous or
malicious, for failure to state a claim upon which relief may be
granted, or because it seeks monetary relief from a defendant who
is immune from such relief.  For the reasons set forth below, the
Court concludes that: (1) the 2253 Complaint should be dismissed,
with some claims being dismissed with prejudice, while others
being dismissed without prejudice to Plaintiff's filing an
amended complaint; and (2) the 2251 Complaint should be proceeded
past the sua sponte dismissal stage with respect to one

Defendant, while Plaintiff's claims against two other Defendants should be dismissed.

I.    **BACKGROUND**

A.    **2251 Complaint**

The 2251 Complaint names the following defendants: the Department of Public Safety ("DPS"), the Atlantic County Justice Facility ("ACJF") and Officer M. Montoya of ACJF ("Montoya"). See 08-2251, Docket Entry No. 1, at 1. The following factual allegations are taken from the Complaint, and are accepted for purposes of this screening only.[1] Plaintiff alleges that, in January of 2007, he was "brutally attacked" and beaten by Montoya, while Plaintiff was in "full body restraints." Id. at 9. According to the Complaint, the force applied to Plaintiff was such that Plaintiff became unconscious. See id. Plaintiff is alleging that Montoya is liable for his injuries and resulting pain and suffering, and ACJF and DPS are liable to Plaintiff as employers of Montoya. See id. at 7-9. Plaintiff seeks damages, as well as firing of Montoya and revocation of Montoya's gun licence. See id. at 11.

_____

[1]  The Court has made no findings as to the veracity of Plaintiff's allegations.  The same applies to this Court's screening of the 2253 Complaint.

**B.    2253 Complaint**

The 2253 Complaint names, as defendants in that action, "Capton Geraldine Cohen," which this Court presumes to be Captain Cohen of ACJF ("Cohen"), and ACJF.  _See_ Civil Action No. 08-2253, Docket Entry No. 1, at 1.  Unlike the 2251 Complaint, the 2253 Complaint includes a "Statement of Claims" section consisting of a five-page narrative, which is difficult to read.  The "Statement of Claims" section begins with an allegation suggesting that, in January of 2007 (that is, about the same time when, according to the 2251 Complaint, Plaintiff was beaten by Montoya), Plaintiff was administratively charged with a disciplinary infraction and sanctioned to a fifteen-day segregated confinement.  _See_ _id._ at 8.  While being in segregated confinement, Plaintiff was placed on 72-hour high security watch. _See_ _id._  Plaintiff requested to speak to Cohen and, during his conversation with her, informed Cohen that he was suicidal and "started cutting [his w]ris[t] open."  _Id._ at 8-9.  It further appears that pepper spray was used (either by Cohen or by another officer present at the scene and acting either on Cohen's direction or _sua_ _sponte_) in order to restrain Plaintiff and stop his efforts to cut his veins.  _See_ _id._ at 9.  This Court can also gather from the first two pages of the "Statement of Claims" that, during the segregated confinement, all Plaintiff's writing and reading materials were temporarily removed from his

possession, he was limited from placing phone calls and limited in the amount of his recreational activities and showers. See id. Finally, it appears from the "Statement of Claims" that Plaintiff spent the total of three weeks outside general population; these three weeks included the fifteen days of administrative segregation (which, in turn, incorporated the 72-hour high security watch), and one-week-long suicide watch. See id. at 8-9.

Starting from page 10 of the 2253 Complaint, Plaintiff's "Statement of Claims" allegations became even harder to understand. For instance, Plaintiff asserts that he was placed in a housing unit "C-Right," where he was denied medical treatment, but without stating that he suffered any ailment (and even without naming the medical staff of the ACJF as Defendants). See id. at 10. He also asserts that he was denied "GED class" and unspecified schooling and, in addition, claims that the food served at ACJF caused him to lose either 10 or 60 pounds in weight. See id. at 11. The "Relief" section clarifies that Plaintiff seeks damages, as well as criminal prosecution of Cohen and ACJF. See id. at 12.

### C.  Other Actions Initiated by Plaintiff in this District

On February 21, 2008, the Clerk received another civil rights complaint from Plaintiff, see Civil Action No. 08-963 (JBS), Docket Entry No. 1 ("963 Complaint"), and one more civil

right complaint has been pending before this Court since April 1, 2008.  See Civil Action No. 08-1600 (RMB), Docket Entry No. 1 ("1600 Complaint").  In his 1600 Complaint, Plaintiff challenges the events of July 3, 2007, which appears to be the date of Plaintiff's arrest underlying his current confinement at ACJF. The 963 Complaint raised challenges to the events related to Plaintiff's prior confinement (while serving a term of imprisonment).  Responding to the 963 Complaint, Judge Simandle made, inter alia, two following observations:

(1)  Plaintiff brings this action against . . . ACJF[]. However, any § 1983 claim asserted against ACJF is subject to dismissal because jail facilities are not "persons" for purposes of § 1983 liability.  See Grabow v. Southern State Correctional Facility, 726 F. Supp. 537, 538-39 (D.N.J. 1989); Mitchell v. Chester County Farms Prison, 426 F. Supp. 271, 274 (D.C. Pa. 1976). Accordingly, the Complaint will be dismissed in its entirety against defendant ACJF, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

(2)  It is not apparent from the [963] Complaint whether [P]laintiff [is] a pretrial detainee or a convicted prisoner . . . .  As a convicted prisoner, his excessive force claim would be analyzed under the Eighth Amendment's cruel and unusual punishment standard.  To prevail on an Eighth Amendment excessive force claim under 42 U.S.C. § 1983, an inmate must show that defendants used force maliciously and sadistically for the very purpose of causing harm. [See] Hudson v. McMillian, 503 U.S. 1, 8-10 (1992). Analysis of whether a pretrial detainee has been deprived of liberty without due process is governed by the standards set out by the Supreme Court in Bell v. Wolfish, 441 U.S. 520 (1979).  In Bell, the Supreme Court held that the proper inquiry is whether the conditions of confinement amount to punishment of the detainee.  "For under the Due Process Clause, a detainee may not be punished prior to an adjudication

of guilt in accordance with due process of law." <u>Bell</u>, 441 U.S. at 535-539.

<u>Wiggins v. Dep't of Pub. Safety</u>, 08-963 (JBS), Docket Entry No. 2, at 5-6, nn. 1, 2.

This Court's own research of the public records maintained by New Jersey Department of Corrections indicates that Germaine J. Wiggins, also known as "Maine," served a prison term from November 14, 2003, till his parole date on July 4, 2006, <u>see</u> <<https://www6.state.nj.us/DOC_Inmate/deta ils?x=1285282&n=0>>, and is currently not in post-conviction custody. Hence, this Court presumes that Plaintiff was, at least at the time of the events underlying the 2251 and 2253 Complaints, if not currently, a pre-trial detainee and assesses his 2251 and 2253 Complaints accordingly.[2]

## II. STANDARD OF REVIEW: RULE 8 PLEADING REQUIREMENT

In determining the sufficiency of a complaint, the Court must be mindful to construe the facts stated in the complaint liberally in favor of the plaintiff. <u>See</u> <u>Haines v. Kerner</u>, 404 U.S. 519 (1972); <u>United States v. Day</u>, 969 F.2d 39, 42 (3d Cir. 1992). The Court should "accept as true all of the [factual] allegations in the complaint and reasonable inferences that can

_____

[2] That said, the Court notes that Plaintiff was, apparently, in confinement after his July 4, 2006, release, since his IFP application indicates his prison account activity from December of 2006 to February of 2007; that activity restarted on July 4, 2007, that is the date following the July 3, 2007, arrest challenged in 08-1600 (RMB) action.

be drawn therefrom, and view them in the light most favorable to the plaintiff."  <u>Morse v. Lower Merion School Dist.</u>, 132 F.3d 902, 906 (3d Cir. 1997).  While a court will accept well-pled allegations as true, it will not accept bald assertions, unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations.  <u>See</u> <u>id.</u>

The Court of Appeals for the Third Circuit recently provided a detailed and highly instructive guidance as to what kind of allegations qualify as pleadings sufficient to puss muster under the Rule 8 standard.  <u>See</u> <u>Phillips v. County of Allegheny</u>, 515 F.3d 224, 230-34 (3d Cir. 2008). The Court of Appeals explained:

> [There are] two new concepts in <u>Twombly</u>.  First, . . . [t]he [<u>Twombly</u>] Court explained that "[w]hile a complaint . . . does not need detailed factual allegations, a plaintiff's [Rule 8] obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." <u>Twombly</u>, 127 S. Ct. at 1964-65 . . . .  The Court explained that Rule 8 "requires a 'showing,' rather than a blanket assertion, of entitlement to relief." <u>Id.</u> at 1965 n.3.  Later, the Court referred to "the threshold requirement of Rule 8(a)(2) that the 'plain statement' possess enough heft to 'sho[w] that the pleader is entitled to relief.'" <u>Id.</u> at 1966.  The Court further explained that a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." <u>Id.</u> at 1965 & n.3.  Second, the Supreme Court disavowed certain language that it had used many times before -- the "no set of facts" language from <u>Conley</u>.  <u>See</u> <u>id.</u> at 1968. . . . As the Court instructed, "[t]his phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." <u>Twombly</u>, 127 S. Ct. at 1969.

[T]he Twombly decision focuses our attention on the "context" of the required short, plain statement. Context matters in notice pleading. . . . [Thus,] taking Twombly and the Court's contemporaneous opinion in Erickson v. Pardus, 127 S. Ct. 2197 (2007), together, we understand the Court to instruct that a situation may arise where, at some point, the factual detail in a complaint is so undeveloped that it does not provide a defendant the type of notice of claim which is contemplated by Rule 8.  See Airborne Beepers & Video, Inc., v. AT&T Mobility L.L.C., 499 F.3d 663, 667 (7th Cir. 2007).  Put another way, in light of Twombly, Rule 8(a)(2) requires a "showing" rather than a blanket assertion of an entitlement to relief.  [Hence,] without some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only "fair notice," but also the "grounds" on which the claim rests.  See Twombly, 127 S. Ct. at 1965 n.3.

The second important concept . . . is the rejection of Conley's "no set of facts" language [which became] problematic because, for example, it could be viewed as requiring judges to speculate about undisclosed facts. . . . After Twombly, it is no longer sufficient to allege mere elements of a cause of action; instead "a complaint must allege facts suggestive of the proscribed conduct."  Id. . . . The Court [however,] emphasized . . . that it was neither demanding a heightened pleading of specifics nor imposing a probability requirement.  See id. at 1964, 1965, 1973 n.14, 1974; [accord] Erickson, 127 S. Ct. at 2200.

The more difficult question raised by Twombly is whether the Supreme Court imposed a new "plausibility" requirement at the pleading stage that materially alters the notice pleading regime.  . . . The Court explained that a plaintiff must "nudge [his or her] claims across the line from conceivable to plausible" . . . . 127 S. Ct. at 1974. . . . "Plausibility" is related to the requirement of a Rule 8 "showing." [Thus, while the court cannot] dismiss[] . . . a well-pleaded complaint simply because "it strikes a savvy judge that actual proof of those facts is improbable," the "[f]actual allegations must be enough to raise a right to relief above the speculative level." Id. at 1965. [T]he pleading standard can be summed up thus: "stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest" the required element. Id. This "does not impose a probability requirement at the pleading stage[]" but . . . "calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of" the necessary element. Id.

Phillips, 515 F.3d at 230-34 (original brackets removed).

**III. DISCUSSION**

    **A.**   **2251 Complaint**

    As Judge Simandle already explained to Plaintiff, any § 1983 claim against ACJF is subject to dismissal because jail facilities are not "persons" for purposes of § 1983 liability. Consequently, Plaintiff's allegations against ACJF will be dismissed, for the reasons detailed in Civil Action No. 08-963, Docket Entry No. 2.  Moreover, the same legal principle applies to Plaintiff's claims against DPS.  See Will v. Mich. Dep't of State Police, 491 U.S. 58, 64 (1989) (divisions of state government, including state agencies, are not "persons" for purposes of § 1983 liability).  Therefore, Plaintiff's claims against DPS will also be dismissed. This Court, thus, limits its detailed analysis to Plaintiff's claims against Montoya.

    As Judge Simandle already pointed out to Plaintiff, in assessing a due process claim by a detainee, the Court must decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose.  See Bell, 441 U.S. at 535-539. Absent a showing of an expressed intent to punish on the part of detention facility officials, that determination generally will turn on whether an alternative purpose to which the action in question may rationally be connected to a legitimate governmental

purpose, and whether it appears excessive in relation to the alternative purpose assigned to it. <u>See</u> <u>id.</u> Thus, if a particular action is reasonably related to a legitimate governmental objective, it does not, without more, amount to "punishment." <u>See</u> <u>id.</u> Conversely, if the action appears arbitrary or purposeless, the Court permissibly may infer that the purpose of the governmental action was punishment that may not constitutionally be inflicted upon detainees. <u>See</u> <u>id.</u>

Assessing Plaintiff's allegations against Montoya, this Court finds that Plaintiff has met his pleading burden, and dismissal of these claims are not warranted at the instant juncture. The Court, therefore, will proceed Plaintiff's claims against Montoya to the next stage.[3]

B.   <u>2253 Complaint</u>

The 2253 Complaint indicates that Plaintiff seeks damages from, as well as initiation of a criminal prosecution of ACJF and Cohen. As noted above, Plaintiff's claims against ACJF will be dismissed, for the reasons detailed by Judge Simandle in Civil Action No. 08-963, Docket Entry No. 2. Moreover, no criminal prosecution of Cohen can be initiated by Plaintiff's filing of a civil complaint. A private plaintiff cannot force a criminal

---

[3] Plaintiff's action, however, will be deemed limited to an action for damages. Section 1983 does not envision a remedy encompassing termination of defendant's employ with--or licensing by--an entity, which is not a party to the action (here, the State of New Jersey).

prosecution because the "authority to initiate a criminal complaint rests exclusively with state and federal prosecutors." See, e.g., Collyer v. Darling, 98 F.3d 211, 222 (6th Cir. 1996); Forney v. Woodridge Hosp. & Johnson City Med. Ctr., 2005 U.S. Dist. LEXIS 37257, at *6 (E.D. Tenn. Sept. 14, 2005). Consequently, Plaintiff, a private citizen, is without authority to prosecute criminal charges against ACJF, see United States v. Jarvis, 560 F.2d 494, 497 (2d Cir. 1977); Pokalsky v. SEPTA, 2002 U.S. Dist. LEXIS 16175 (E.D. Pa. Aug. 28, 2002); see also Savage v. Arnold, 403 F. Supp. 172 (E.D. Pa. 1975) ( a private party cannot, on his own, commence a criminal proceeding for failure to meet to comply with the requirements of Rules 3 and 4 of the Rules of Criminal Procedure and citing, inter alia, Spader v. Wilentz, 25 F.R.D. 492 (D.N.J), aff'd, 280 F.2d 422 (3d Cir.), cert. denied, 364 U.S. 875 (1960)).  Moreover, this Court is also without authority to do so on Plaintiff's behalf, since

> [i]t is well established that private citizens can neither bring a direct criminal action against another person nor can they petition the federal courts to compel the criminal prosecution of another person.  See Maine v. Taylor, 477 U.S. 131, 137 (1986); Heckler v. Chaney, 470 U.S. 821, 832 (1985); Leeke v. Timmerman, 454 U.S. 83, 86-87 (1981); United States v. General Dynamics Corp., 828 F.2d 1356, 1366 (9th Cir. 1987). Accordingly, the district court [is obligated to] refus[e] fil[ing] criminal charges or . . . compel[ing] prosecution based on those charges.

Ellen v. Stamm, 1991 U.S. App. LEXIS 30558 (9th Cir. Dec. 19, 1991), cert. denied, Montalvo v. Stamm, 506 U.S. 1047 (1993).

Consequently, this Court's detailed analysis of the 2253 Complaint will be limited to Plaintiff's claims for damages against Cohen.

      **1.   Claims Based on High-Security and Suicide Watches**

Plaintiff claims that the 72-hour high security watch and one week of suicide watch violated his constitutional rights.[4] In <u>Sandin v. Conner</u>, 515 U.S. 472 (1995), the Supreme Court held that a state created liberty interest "will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." <u>Sandin</u>, 515 U.S. at 484. <u>Sandin</u>, however, involved the rights of convicted prisoners, not the rights of pre-trial detainees; and the majority of courts addressing the issue of whether the <u>Sandin</u> analysis applies to pretrial detainees concluded that it does not. <u>See</u>, <u>e.g.</u>, <u>Rapier v. Harris</u>, 172 F.3d 999, 1002-03 (7th Cir. 1999); <u>Mitchell v. Dupnik</u>, 75 F.3d 517, 524 (9th Cir. 1995). The Court of Appeals for the Third Circuit expressly guided that:

    The focus in <u>Sandin</u> was on state-created liberty
    interests regarding "freedom from restraint which,
    while not exceeding the sentence in such an unexpected
    manner as to give rise to protection by the Due Process

_____

    [4]  Plaintiff does not appear to challenge the fact of his fifteen-day administrative segregation.

Clause of its own force, . . . nonetheless imposes
atypical and significant hardship on the inmate in
relation to the ordinary incidents of prison life."
[Sandin, 515 U.S.] at 484 . . . .  The Court emphasized
that its holding was driven by "the range of
confinement to be normally expected for one serving an
indeterminate term," id. at 487, and the "expected
perimeters of the sentence imposed by a court of law,"
id. at 485.  Several courts of appeals, including this
one, subsequently concluded that "Sandin does not apply
[to pretrial detainees].  Sandin concerned punishment
of a sentenced prisoner, and therefore required a
completely different analysis."  Fuentes, 206 F.3d at
342 n.9 . . . .

Stevenson v. Carroll, 495 F.3d 62, 69 n. 4 (3d Cir. 2007).

Moreover, the Stevenson court clarified that, "[i]n Hubbard v.

Taylor, 399 F.3d 150 (3d Cir. 2005), we explained that '[o]ur

inquiry into whether given conditions constitute 'punishment'

must therefore consider the totality of circumstances within an

institution.'"  Stevenson, 495 F.3d at 69 (quoting Hubbard, 399

F.3d at 160).  Thus, where a detainee

assert[s] that, as compared to the conditions for the
general prison population, housing in the [segregated
confinement] is significantly more restrictive,
[especially in the detainee] draws specific,
item-by-item  comparisons between the restrictions in
the [segregated confinement] and those in the general
prison population[,] . . . the [detainee's] complaint
raise[s] an inference of impermissible punishment that
precludes granting a motion to dismiss and may warrant
further discovery. . . . Although pretrial detainees do
not have a liberty interest in being confined in the
general prison population, they do have a liberty
interest in not being detained indefinitely in the
[segregated confinement] without explanation or review
of their confinement.  This result is compelled by
[the] holding in Shoats v. Horn, 213 F.3d 140 (3d Cir.
2000).

Id. at 69-70.

Page 14 of  25

Here, Plaintiff does not allege that his conditions of confinement in the administrative segregation were different (*i.e.*, further restricted) during the 72-hour high security watch period encompassed in his fifteen-day segregation. As drafted, Plaintiff's 2253 Complaint implies only the inconvenience of more frequent observations of Plaintiff by ACJF's officers during the period of these 72 hours. Frequent observations by a prison official, however, cannot amount to a "significantly more restrictive" conditions of confinement; at most, they could be construed as an unwarranted right to privacy claim.[5]  Hence,

---

[5]  The right to privacy is usually examined under the Fourth Amendment, which protects "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures." U.S. CONST. amend. IV.  Reasonableness under the Fourth Amendment "depends on all of the circumstances surrounding the search or seizure and the nature of the search or seizure itself." Skinner v. Ry. Labor Executives' Ass'n, 489 U.S. 602, 618 (1989) (quoting United States v. Montoya de Hernandez, 473 U.S. 531, 537 (1985)).  "Thus, the permissibility of a particular practice is judged by balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests." Id. at 619 (quotation marks and internal citation omitted).  In Hudson v. Palmer, 468 U.S. 517, 530 (1984), a prisoner argued that a cell search conducted to harass him was unreasonable because a prisoner has a reasonable expectation of privacy not to have his cell, locker, personal effects, person invaded for such a purpose. Id. at 529.  The Supreme Court rejected the claim because "prisoners have no legitimate expectation of privacy." Id. at 530. The Court observed that "society would insist that the prisoner's expectation of privacy always yield to what must be considered the paramount interest in institutional security. . . . [I]t is accepted by our society that loss of freedom of choice and privacy are inherent incidents of confinement." Id. at 527-28 (footnotes, citations and internal quotation marks omitted). The same conclusion was reached with respect to detainees other than
(continued...)

while not ruling out the possibility that Plaintiff might be able to cure his due process claim with respect to the 72-hour high security watch by filing an amended complaint detailing the increase in restrictions that he experienced as a result of his 72-hour high security watch, this Court cannot find that the claim, as it is framed now, provides "enough factual matter . . . to suggest" that being placed on the watch violated Plaintiff's due process rights.  See Phillips, 515 F.3d at 234 (citation omitted).  The Court, therefore, will grant Plaintiff leave to amend that claim.

In contrast, this Court finds Plaintiff's due process allegations wholly without merit as to Plaintiff's objection to being placed on one-week suicide watch (after Plaintiff expressly stated that he wished to commit suicide and illustrated the seriousness of his intentions by cutting his wrist).  Indeed, Cohen would be liable to Plaintiff had she *not* taken preventive actions.  See Davis v. Marble, 1999 U.S. App. LEXIS 5988, at *8 (7th Cir. Mar. 26, 1999) (prison officials did not violate a detainee's due process rights by keeping him in the padded cell for more than 24 hours to ensure his well-being); see also Sullivan v. Bornemann, 384 F.3d 372, 376 (7th Cir. 2004) (brief

---

[5](...continued)
convicted prisoners.  See Bell, 441 U.S. at 558-560.  In light of the language used in Hudson v. Palmer and the holding of Bell, a 72-hour period of close observation by prison officials does not violate a detainee's civil rights.

restraint of a detainee by officers in order for medical
personnel to perform catheterization procedure did not violate
plaintiff's constitutional rights under either Fourth or
Fourteenth Amendments and citing Estate of Allen v. City of
Rockford, 349 F.3d 1015, 1020 (7th Cir. 2003) (for the
proposition that officers' decision not to act would have left
them open to charges of due process violations for failure to
provide appropriate medical care to a pretrial detainee);
Collignon v. Milwaukee County, 163 F.3d 982, 991 (7th Cir.1998)
(for the observation that a county had a duty to provide for the
basic medical needs of a pretrial detainee); and Collignon v.
Milwaukee County, 163 F.3d 982, 990 (7th Cir. 1998) (for the
conclusion that, under the policies calculated to provide
reasonable safety to persons in custody, a court should uphold a
jail's enforcement of a suicide watch as a preventative safety
measure prudently designed to eliminate the risk of injury to the
detainee)).  Moreover, since Plaintiff was informally notified
about the reason for his placement on the suicide watch, Cohen's
obligations as to Plaintiff's due process rights to a notice--
even if these rights were deemed implicated--were satisfied.  Cf.
Stevenson, 495 F.3d at 71 ("the Due Process Clause requires only
an informal nonadversary review of evidence in order to confine
an inmate feared to be a threat to institutional security . . . .
This informal nonadversary review is satisfied when an inmate

receives some notice of the charges against him and an
opportunity to present his views") (internal quotation marks,
citation and original ellipsis omitted).

### 2.   Claims Based on Incidents of Segregation

While not challenging the *fact* of his fifteen-day segregated
confinement, Plaintiff vaguely articulates certain challenges to
the conditions of that segregated confinement.  Specifically, he
mentions full expropriation of his reading and writing materials
for the duration of this two-weeks-long segregation, a ban on
telephone calls and limitations as to the amount of recreational
activities and showers.

However, the short duration of Plaintiff's segregated
confinement, even if the confinement was accompanied by certain
idleness and inconveniences, suggests that the incidents of such
confinement did not violate the standard articulated in Bell.
Indeed, while there is no constitutional right to rehabilitation,
it has been recognized that the total absence of rehabilitation
programs may violate the Constitution.  See, e.g., Finney v.
Arkansas Board of Correction, 505 F.2d 194, 208-09 (8th Cir.
1974), aff'd sub nom., Hutto v. Finney, 437 U.S. 678 (1978);
McCray v. Sullivan, 509 F.2d 1332, 1335 (5th Cir. 1975), cert.
denied, 423 U.S. 859 (1975).  However, as noted in Pugh v. Locke,
406 F. Supp. 318, 330 (M.D. Ala. 1976), rehabilitation is only
required to the degree that the totality of the conditions of

confinement are identified as causing physical, mental or social degeneration of the prisoners:

> While courts have thus far declined to elevate a positive rehabilitation program to the level of a constitutional right, it is clear that a penal system cannot be operated in such a manner that it impedes an inmate's ability to . . . avoid physical, mental or social deterioration.

406 F. Supp. at 330, aff'd sub nom., Newman v. Alabama, 559 F.2d 283 (5th Cir. 1977).  Thus, even in the context of enforced idleness and certain life style inconveniences (which very well might be a central fact of existence in the segregated confinement), the short duration of confinement ensuring against the undue risk of physical, mental and social degeneration of the detainee suggests against a finding of a violation meeting the Bell standard.  See, e.g., Betz v. Cornelius, 1986 U.S. Dist. LEXIS 16573 (N.D. Ill. Dec. 11, 1986) (where the detainee "alleges . . . injuries collateral to his confinement, such as the denial of reading materials and restrictions on visits," the detainee fails to state a claim "[g]iven that [he] was restrained for only ten days").  Therefore, as drafted, these challenges are subject to dismissal.

However, it is beyond dispute that a detainee has a constitutional right of access to the courts, for the purposes of preparation for his trial and/or to challenge the conditions of his confinement, and if Plaintiff was denied access to reading and writing material needed for Plaintiff's legal actions (rather

than entertainment), or refused phone calls to and visits with his legal counsel, *and* this temporary denial of materials and contacts prejudiced Plaintiff with regard to his legal matters, Plaintiff might have a valid First Amendment claim. Similarly, if the restrictions as to the amount of Plaintiff's exercise and hygiene were such that they exposed Plaintiff to the risk of physical harm *and* that harm actually occurred, Plaintiff might have a viable due process claim. Since it appears plausible that Plaintiff, if granted leave to amend his 2253 Complaint, might articulate such access to the courts or due process claims sufficiently to meet his pleading burden, this Court finds it prudent to dismiss the allegations related to the incidents of Plaintiff's segregated confinement without prejudice and grant Plaintiff leave to amend.

### 3.   Remaining Claims

The remaining allegations set forth in the 2253 Complaint are too vague and incomprehensible. Moreover, they appear to have no relationship to Cohen or Plaintiff's segregated confinement or his high-security and suicide watches.

Rule 20(a)(2) of the Federal Rules of Civil Procedure limits the joinder of defendants, and Rule 18(a), governs the joinder of claims. See Fed. R. Civ. P. 18(a), 20(a)(2). Rule 20(a)(2) provides: "Persons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them

jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2)(A) and (B). Rule 18 (a) provides : "A party asserting a claim . . . may join, as independent or alternative claims, as many claims as it has against an opposing party." Fed. R. Civ. P. 18(a). Wright & Miller's treatise on federal civil procedure explains that, where multiple defendants are named, the analysis under Rule 20 precedes that under Rule 18:

> Rule 20 deals solely with joinder of parties and becomes relevant only when there is more than one party on one or both sides of the action. It is not concerned with joinder of claims, which is governed by Rule 18. Therefore, in actions involving multiple defendants Rule 20 operates independently of Rule 18 . . . Despite the broad language of Rule 18(a), plaintiff may join multiple defendants in a single action only if plaintiff asserts at least one claim to relief against each of them that arises out of the same transaction or occurrence and presents questions of law or fact common to all . . .

Charles Allen Wright, Arthur R. Miller, Mary Kay Kane, 7 <u>Federal Practice & Procedure Civil 3d</u> §1655; <u>see also</u> <u>United States v. Mississippi</u>, 380 U.S. 128, 143 (1965) (where county registrars were alleged to be carrying on activities which were part of a series of transactions or occurrences the validity of which depended upon questions of law or fact common to all of them, joinder of registrars in one suit as defendants was proper under Rule 20(a)); <u>Ross v. Meagan</u>, 638 F. 2d 646, 650 n.5 (3d Cir.

1981), <u>overruled on other grounds by</u>, <u>Neitzke v. Williams</u>, 490 U.S. 319, 328 (1989) (joinder of defendants is not permitted by Rule 20 unless both commonality and same transaction requirements are satisfied).

Consequently, a civil plaintiff may not name more than one defendant in his original or amended complaint unless one claim against each additional defendant is transactionally related to the claim against the first defendant and involves a common question of law or fact. <u>See</u> Fed. R. Civ. P. 20(a)(2). As the United States Court of Appeals for the Seventh Circuit recently explained, a prisoner may not join in one case all defendants against whom he may have a claim, unless the prisoner satisfies the dual requirements of Rule 20(a)(2):

> Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass that [a multi]-claim, [multi]-defendant suit produced but also to ensure that prisoners pay the required filing fees - for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915(g) . . .
> A buckshot complaint that would be rejected if filed by a free person - say, a suit complaining that A defrauded the plaintiff, B defamed him, C punched him, D failed to pay a debt, and E infringed his copyright, all in different transactions - should be rejected if filed by a prisoner.

<u>George v. Smith</u>, 507 F. 3d 605, 607 (7th Cir. 2007).

Here, it is entirely unclear how Cohen, a correctional officer rather than a medical doctor, could deny Plaintiff medical care.  Moreover, the 2253 Complaint is silent as to the ailment suffered by Plaintiff.  Similarly, it is not explained how Cohen, a prison guard, could deny Plaintiff certain classes and schooling; and the 2253 Complaint is silent as to the nature of education Plaintiff sought.  In the same vein, it is entirely unclear how Cohen could be connected to food services of ACJF and cause Plaintiff loss of weight; and the 2253 Complaint is confusing as to whether the weight loss was 10 or 60 pounds, as well as the connection between the alleged weight loss and the food (e.g., it is unclear if the food caused diarrhea, or was of uneatable quality or served in way too small amounts).  Finally, the 2253 Complaint does not clarify how all of the above relates to Plaintiff's being placed in segregated confinement, or on high-security and suicide watches.  Consequently, these stated claims will be dismissed without prejudice to Plaintiff stating, with greater clarity, the facts underlying those claims and explaining how they relate to Defendant Cohen or to Plaintiff's segregated confinement, and high-security and suicide watches.

**IV.  CONCLUSION**

For the foregoing reasons, Plaintiff's claims in Civil Action No. 08-2251 raised against ACJF and DPS will be dismissed with prejudice.  Plaintiff's claims in Civil Action No. 08-2251

raised against Montoya will be proceeded past the <u>sua</u> <u>sponte</u>
dismissal stage, but solely for the purposes of Plaintiff's
action for damages.

Plaintiff's claims in Civil Action No. 08-2253 will be
dismissed.  The allegations against ACJF will be dismissed with
prejudice, and Plaintiff's claims seeking criminal charges
against Cohen will be dismissed in the same fashion.

Plaintiff's allegations asserting violations of his rights
by having him placed on suicide watch will also be dismissed with
prejudice for failure to state a claim upon which relief may be
granted.

Plaintiff's claims challenging his placement on high-
security watch and his conditions of segregated confinement will
be dismissed without prejudice to Plaintiff's filing of an
amended complaint in the Civil Action No. 08-2253; such amended
complaint should clarify: (a) the physical deprivations Plaintiff
suffered as a result of being placed on high-security watch; and
(b) the physical harm to which Plaintiff was exposed and endured
(as well as the prejudices to Plaintiff's legal matters suffered)
as a result of the deprivations associated with his segregated
confinement.

Plaintiff's remaining claims (<u>i.e.</u>, those related to his
unmet medical needs, loss of weight, denial of schooling, etc.)
will similarly be dismissed without prejudice to inclusion in his

amended complaint allegations meeting the requirement of Rules 18 and 20 and detailing the facts underlying these claims.[6]

An appropriate Order accompanies this Opinion.

s/Renée Marie Bumb
**RENÉE MARIE BUMB**
**United States District Judge**

Date: June 3, 2008

---

[6] In light of this Court's desire to ensure that the Court would be able to assess Plaintiff's amended complaint properly, Plaintiff is strongly encouraged to draft his amended complaint in handwriting as legible as possible (or have it typed) and to state his allegations in complete sentences conveying Plaintiff's points with the degree of clarity maximally possible to Plaintiff.   In addition, Plaintiff should clarify whether, at the time of the events underlying his amended complaint, Plaintiff was a pre-trial detainee or was convicted of a crime and serving his prison term.